**IN THE UNITES STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Suresh  Sharma , | ) | |
|     Plaintiff, | ) | |
| | ) | Case No.  2017-cv-7378 |
|    v. | ) | |
| | ) | The Honorable Andrea R. Wood |
| Board of Trustees of the University of | ) | |
| Illinois Defendant. Dimitri T. Azar, Dean | ) | Magistrate Hon. Susan E. Cox |
| of the University of Illinois (Chicago | ) | |
| campus, College of Medicine), in his | ) | Jury Demanded |
| official and individual capacity; Todd | ) | |
| Van Neck, Associate Dean of | ) | |
| Administration, University of Illinois, | ) | |
| (Chicago Campus, College of Medicine), | ) | |
| in his official and individual capacity; | ) | |
| Benjamin Van Voorhees, Head of | ) | |
| Department of  Pediatrics, University of | ) | |
| Illinois, (Chicago campus, College of | ) | |
| Medicine), in his official and individual | ) | |
| capacity, and Dr. Alan Friedman in his | ) | |
| individual capacity | ) | |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS HIS SECOND AMENDED COMPLAINT

Suresh Sharma, (Plaintiff) by and through his attorney, Jorge Sanchez, presents his Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion To Dismiss His Second Amended Complaint as follows:

### INTRODUCTION

Suresh Sharma began working for Defendant Board of Trustees in 2005 as a Business and Financial Systems Specialist in the College of Urban Planning and Public Affairs at University of Illinois at Chicago (UIC) . (Docket 19 ¶ 7) Mr. Sharma received numerous promotions and commendations over the course of his tenure at UIC, and came to hold the position of Director of Administrative Operations for the Department of Pediatrics at UIC. (Docket 19 ¶¶ 7, 16-24)  Mr. Sharma excelled in each of these positions and

routinely received high-scoring evaluations. (Docket 19 ¶ ¶ 25-26)  Mr. Sharma took

seriously the policies, protocols and procedures as an individual charged with, among

other things, overseeing the finances of the Department of Pediatrics.   Mr. Sharma's

colleague, Marc Archambeau, Director of Finance and Chief Accountant, Ambulatory, told

Sharma that Sharma's insistence on adherence to and enforcement of UIC policies

caused consternation with Defendants Todd Van Neck and Dimitri Azar and that he

understood that they wanted to terminate him because of this.  (Docket 19 ¶ ¶ 26-27)

Defendants attempt to minimize the issues Mr. Sharma raised in their motion to dismiss.

But, Defendants Azar and Van Neck provided this direct evidence of animus and intent to

retaliate against Mr. Sharma which they acted upon when Defendant Benjamin Van

Vorhees replaced his supervisor, Dr. Usha Raj.  It was Dr. Raj who told Mr. Sharma that a

recommended raise of 7% was lowered precisely because of his correcting the report of

bad debt within the Department.  (Docket 19 ¶ 30)

Despite the detail in Mr. Sharma's Second Amended Complaint, Defendants

repeatedly argue that his Complaint lacks specificity.  Plaintiff believes that he has

provided more detail than is required to fully apprise Defendants  of the actions they

took and the consequences of these to Mr. Sharma's career at UIC -- which ended with

his termination on a trumped-up accusation that this highly ethical, collegial and

responsible man somehow posed a danger to his co-workers — this,  in the complete

absence of any reprimands, discipline or other actions which would call his competence

and mental stability into question. For the reasons as argued below Mr. Sharma

respectfully requests that this Court deny Defendants' Motion to Dismiss, or in the

alternative to give him leave to amend his complaint to cure any defects, should the

Court find these. Plaintiff will address each of Defendants' arguments in turn in the order

presented.

## ARGUMENT

I. **Plaintiff's raising the issue of race discrimination in his Complaint causes Defendant UIC no prejudice as it simply reframes an allegation of color discrimination as race discrimination.**

America has a race problem that is unique in its manifestations and often tied to

issues of national origin, color, and even religion. While there is no biological basis for

racial categories the reification of race and the ideology of white supremacy makes

distinguishing these categories, and their overlap, complicated and not necessarily easy

to understand or explain by people, like Mr. Sharma, who don't fall neatly into a

Black/white paradigm of race. Mr. Sharma in his EEOC charge checked the box on the

form alleging color discrimination. (Exhibit 1 – EEOC charge) This alone should be

enough to invoke a race claim as color is often a proxy for race. In this case color means

not white. Lest there be any question of what Mr. Sharma believed when he filed his

charge, the addendum or "Rider to Charge of Discrimination" provides the details that

clearly put race discrimination at issue in this case. In the rider, Mr. Sharma alleges that

his "skin color is brown." (Exhibit 1 p.4 ¶ III. A.) He further alleges, "[o]ther similarly

situated employees who do not have brown skin color were treated more favorably than

me." (Exhibit 1 p.4 ¶ III. G.)    He connects this directly to race in the following

paragraph: "UIC terminated other people of color and *hired Caucasians*." (Exhibit 1 p.4 ¶

III. H. (emphasis supplied) This statement puts race squarely at issue in the case, and

gives Defendants notice of this fact. To the extent the Court disagrees with Defendants'

analysis, Plaintiff requests leave to amend his complaint to allege color discrimination.

3

II.    **Plaintiff has adequately pleaded race and national origin claims under 42 U.S.C. §1981.**

   A. **Plaintiff has plausibly pleaded causes of action for national porigina nd race discrimination under 42 U.S.C. §1981.**

Defendants cite to two cases to ground their argument that Plaintiff hasn't "plausibly" pleaded his race and national origin claims. Defendants cite the inapposite case *Brooks v. Ross,* 578 F.3d 574 for the proposition that Defendant must state with specificity allegations which tie individuals to the alleged unconstitutional conduct. The Court explained its application of the then recently decided *Iqbal* and *Twombly* as follows:

> So, what do we take away from *Twombly*, *Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements. 578 F.3d at 581.

The Court further explained:

> Nonetheless, this paragraph fails under *Iqbal*, because it is merely a formulaic recitation of the cause of action and nothing more. It therefore does not put the defendants on notice of what exactly they might have done to violate Brooks's rights under the Constitution, federal law, or state law.

The detail contained in Plaintiff's 47 page complaint can hardly said to be a mere "formulaic recitation of the cause of action and nothing more." The passage quoted out of context by Defendants may have a valid application in some other case, but not in the one here at bar. Defendants' citation to *Dix v. U.S.* 20101 WL 2607262 also makes the baseless comparison of Plaintiff's complaint to a complaint that "bare assertions were nothing more than a 'formulaic recitation of the elements'" and faisl for the same reason as their citation to *Brooks.*

4

**B. Defendants are not immune in their individual capacity for violations of Mr. Sharma's right to be free from discrimination in the performance of and termination of contract pursuant to 42 U.S.C. §1981.**

Defendant concedes that 42 U.S.C. §1981 claims cannot be brought against the State nor individuals acting in their official capacity. But this misapprehends or ignores the fact that Mr. Sharma has sued UIC Defendants in their official *and* individual capacities. Plaintiff requests leave to correct a scrivener's error in stating that Count IX was brought against Defendants in their official capacities and not their individual capacities.

**III. Plaintiff has stated two distinct claims under the ADA against Defendants in counts III and IV of his Complaint.**

Defendants' arguments on this point veer into the realm of fact disputes. Because of this and other reasons articulated below, the Court should deny Defendants' motion as to his ADA counts. Plaintiff, after being forced to undergo medical and psychiatric evaluations and to sign over access to his medical history on penalty of termination, was never returned to his position because Dr. Friedman refused to clear him allegedly because Mr. Sharma lied during his evaluation. (Docket 19 ¶161, 163) Subjecting Mr. Sharma to illegal medical and psychiatric evaluations (in contravention of UIC's own policies on medical evaluations (Docket 19 ¶136)) and this continuing refusal to allow Sharma to return to work violated his rights under the ADA in two ways.

**A. Whether Mr. Sharma posed any danger to his colleagues and the purported reasons for subjecting him to a medical and psychiatric evaluation are factual matters hotly contested by Plaintiff and inappropriate for resolution on a motion to dismiss.**

Despite any exceptions under the ADA which allow employers to subject employees to examinations into their capacity to perform their job, and whether they pose a danger to their co-workers, those are wholly inapplicable to the case at hand.

5

Clearly, Plaintiff has alleged throughout his Complaint that he was subjected to this treatment as retaliation for his adherence to UIC policies and procedures and that Defendants Van Vorhees, Van Neck, Friedman, and Azar conspired to trump up wholly false and unwarranted allegations to subject him to a process intended to result in his dismissal behind the fig leaf created by Defendants to justify their actions. This makes their behavior all the more pernicious and worthy of personal liability for compensatory and punitive damages claimed by Mr. Sharma.

### B. Mr. Sharma brings two distinct claims, one for being regarded as disabled and the other for subjecting him, unwarrantedly, to evaluations.

Mr. Sharma clearly makes out two distinct claims under the ADA and cites two different sections of the Act in doing so. In Count III, Plaintiff sues under 42 U.S.C. § 12102(1)(C), which prohibits treating or regarding an employee as disabled. Simply put, by refusing to return Mr. Sharma to work after his evaluation, Defendants, in essence, treated him as if her were so emotionally disabled that he was unable to return to work because he allegedly posed a danger to his co-workers.

All of the cases cited by Defendants in support of the argument that it had a right to subject Mr. Sharma to medical evaluations are cases which were decided at summary judgment. *Manson v. Gen. Motors Corp.*, 66 Fed Appx 28, 1-2 (7th Cir. 2003), cited by Defendants is an appeal from *summary judgment* where plaintiff boasted that he had a license to carry a firearm and had caused a great disturbance. After discovery and briefing on summary judgment, the trial court found (as an uncontested fact) that the employer made a "legitimate attempt" to determine whether the employee was a danger to the workplace. Id. Here, Mr. Sharma contends that Defendants manufactured reasons

to subject him to testing. His complaint details the shifting pretextual reasons for it. In

paragraph 164 Mr. Sharma alleged:

> On July 31, 2015, after Mr. Sharma made multiple requests for UIC's reason for
> the medical evaluations, Dr. Van Voorhees sent Mr. Sharma a letter claiming that
> the reasons for the medical and psychological evaluations were (1) repeated
> instances of insubordination, (2) disregard of directions; and (3) disorganized
> thinking. . (Docket 19 ¶ 164)

This flies in the face of *post hoc* rationalizations that

> "after Mr. Sharma was placed on leave, UIC had to "respond to multiple
> allegations of emotional and physical intimidation, several violations of
> University Ethics policy involving travel, and potential violations of payroll
> policies." . (Docket 19 ¶ 164)

These shifting rationales evince Defendants seeking, after the fact, to justify their actions

after realizing the thinness of the initial excuses they gave for subjecting Mr. Sharma to

this humiliating, unwarranted and illegal treatment.

Other cases cited by Defendants are similarly inapplicable*.* In *Malkowski v. PTC

Capital Corp.*, 198 WL 142374 (NDIL), decided after summary judgment stand for the

proposition that an employer has a right to evaluate an employee to evaluate whether

they can perform their job. Here Mr. Sharma was performing his job consistently beyond

expectations and alleges that the ill treatment he received was motivated by illegal

reasons – facts that must be taken as true for the purpose of this motion. *Painter v. Ill

Dept. of Transp.*, 2017 WL 6032504 (7th Cir. 2017) and *Coffman v. Indianapolis Fire Dept.*,

578 F.3d 559 (7th Cir. 2009) are also both appeals from summary judgment and both

speak of employers legitimate safety concerns. There are no such legitimate concerns

here based on the allegations of the Complaint.

Plaintiff's claim under 42 U.S.C. § 12112(d)(4)(A) seeks redress not just for

refusing to return him to work, but for subjecting him to the unwarranted invasion of his

rights in the first instance. This is a distinct claim under a different section of the ADA and despite sharing some of the underlying facts in support thereof, nevertheless states a valid claim for violating the prohibition against *unwarranted* inquiries into an employee's medical and psychiatric condition. Whether such measures were, in fact, warranted are matters for inquiry through discovery and resolution by a jury and cannot be decided at the pleading stage.

IV.     **Plaintiff has clearly articulated a case for retaliation under the State Employees and Ethics Act.**

Plaintiff alleges a continuing scheme to force him from his position because of his insistence on adherence to UIC policies on a variety of topics. Certainly, he points to an incident in 2013 as perhaps the catalyst for Van Neck and Azar to target him for retaliatory termination. It is hardly surprising that it took some time to bring this scheme to fruition. Mr. Sharma was protected while Dr. Raj was his supervisor and assured him that he was performing his duties in an exemplary manner. (Docket 19 ¶¶29-30) It wasn't until she was removed that he was at the mercy of Van Vorhees, Azar, and Van Neck.

Defendants argue, citing to *Hoffelt v. Ill. Dept. of Human Rights*, 367 Ill App. 3d. 628 (1st Dist. 2006), that denial of a raise does not constitute an adverse action under the Act. This is either a purposeful misreading of the case or a failure to understand its import. The court in *Hoffelt* merely enumerates situations where an adverse job action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Id. at 633. The court does not purport to articulate an

exhaustive list of adverse actions – simply things that "might" be considered to be one.

Clearly, not receiving a raise on the basis of an outstanding review hurt Plaintiff

economically and can be considered a reduction in salary from the salary he would have

received but for Defendants' retaliatory actions.

Defendants' conclusory arguments that Mr. Sharma did not plead any act "against

the law" ignore the fact that Mr. Sharma had several instances where he confronted

Defendants with their violations of (or attempted violations of ) UIC policies. Defendant

argues that Plaintiff's Complaint does not identify any "law, rule or regulation" the

Defendants purportedly violated.  But it was precisely because he pointed out that

several actions they undertook violated UIC policies or rules that Defendants targeted

him for dismissal.  (Docket 19 ¶¶46-56) That their enmity would continue to build over

time such that they falsely accused Mr. Sharma of insubordination for failing to "follow

orders" is hardly surprising and evince a growing effort to push out Mr. Sharma as an

obstacle for their running roughshod over UIC policies and rules.  Defendants then argue

that the list of issues over which he had differences with Defendants were mere "office

quibbles" – but this too requires that the Court adopt a version of the facts favorable to

Defendants.  If these were mere office quibbles why then did they accuse Mr. Sharma of

insubordination for not acquiescing to them? (Docket 19 ¶¶ 164) And if these were mere

quibbles (and they were not), why was an exemplary employee like Mr. Sharma, with no

history of ill treatment of his coworkers or any other shortcomings, be subject without

notice or justification to a psychiatric evaluation and invasion of his personal medical

records?

**V.      Plaintiff concedes the dismissal of his First Amendment Count VI**

Defendants are correct that Mr. Sharma spoke out about his concerns over

improprieties as part of his job duties under the existing case law this is likely fatal to

his count VI.

**VI.     Plaintiff has successfully pleaded violations of his rights to Equal
         Protection and Due Process under the Fourteenth and Fifth Amendments of
         the Constitution.**

Defendant argues that Plaintiff's Constitutional claims cannot be brought against "state

actors." They are correct that actions against the UIC Defendants in their official

capacities can only be brought for injunctive and declaratory relief. "Official-capacity

actions for prospective relief are not treated as actions against the State" and are

therefore allowed. *Kentucky v. Graham*, 473 U.S. at 473 U. S. 167, n. 14; *Ex parte Young,*

209 U. S. 123, 209 U. S. 159-160 (1908) Here, Plaintiff has named UIC Defendants in their

official and individual capacities and seeks reinstatement as a form of relief requested,

as well as declaratory relief that their actions violated the Constitution. (Docket 19 p. 40

A, B, F) For the purposes of providing injunctive and declaratory relief all UIC

Defendants named in their individual capacities should remain unless it is established

that they cannot provide the relief requested.

None of the cases cited by Defendants hold that these claims cannot be brought

against UIC Defendants in their individual capacities. In *Scheuer V. Rhodes*, 416 U.S. 232,

237 (1974), a case in which the estates of students killed at Kent State sought money

damages, the Supreme Court explained that

> Ex parte Young teaches that, when a state officer acts under a state law in a
> manner violative of the Federal Constitution, he "comes into conflict with the
> superior authority of that Constitution, and he is, in that case, stripped of his
> official or representative character, and is subjected in his person to the

consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." (internal citations omitted)

Although the Court did not hold that damages were due as the case was on appeal from a grant of a motion to dismiss, it did hold that it was possible for plaintiffs in that case to establish personal liability for money damages. Here, Mr. Sharma seeks precisely these kinds of damages against UIC Defendants (and Friedman) in their individual capacities.

Defendants continue to cite cases in which judgment was rendered to argue that this Complaint should be dismissed at the pleading stage. They cite *Hiatt v, Rockwell Int'l Corp.*, 26 F3d 761 (7th Cir. 1994), to argue that "more than mere evidence that other employees were not discharged for arguably similar misconduct" must be shown to establish liability. This case reached the Seventh Circuit on appeal from a jury verdict and the Court held that no such showing was made. Plaintiff alleged in paragraphs 201 through 206 of his Complaint that at least three Caucasian individuals who were the subject of repeated complaints about their verbally abusive behavior were neither subjected to medical or psychological exams nor terminated. Although, Mr. Sharma denies that he ever subjected anyone to comparable treatment, he argues that if he did do what was alleged, others who did worse did not receive the same sanctions. Plaintiff is at a loss to understand what more Defendants believe must be alleged at this stage in the case to allege disparate treatment on the basis of national origin or race.

Contrary to Defendants' assertion that Plaintiff does not explain how Defendants failed to afford him Due Process, but this too has been pled clearly by Plaintiff. The paragraphs beginning at 82 and continuing through 136, detail Defendants' conduct which was violative of his Due Process rights. Mr. Sharma, alleged that with no prior

11

warning he was ordered out of a meeting by Van Vorhees accompanied by two security

guards. With no prior history of complaints or discipline he was forced to go

immediately to University Health Services. (Docket 19 ¶¶ 84, 88-90)  When he tried to

inquire of HR Coordinator, Nivid Thakar, as to his right to know the reason it was being

ordered Van Vorhees interrupted and told him he would be subject to termination

unless he came with Van Vorhees and did not allow him to receive the UIC policy on

medical examinations. (Docket 19 ¶¶  84-86)

He was subjected to drug and alcohol tests, was required to authorize the release

of any and all medical records, ordered to undergo a psychiatric evaluation and placed

on administrative leave. (Docket 19 ¶¶  96, 101-103) Despite passing the psych

evaluations at UIC, Mr. Sharma Van Vorhees told him he needed to be evaluated by Dr.

Friedman and sign a broad medical release. (Docket 19 ¶¶  126-7) Mr. Sharma requested

that he be evaluated by someone other than Dr. Friedman which was denied. In doing so,

Defendants violated UIC policy which required them to make an attempt to resolve the

situation before resort to any evaluation, to provide him with information as to his

rights, and to deny him the right to select an evaluator from a list of 3-5 unaffiliated

health care providers. (Docket 19 ¶¶  133-6)

Mr. Sharma had no way of challenging Friedman's allegation that he lied in responding

to a battery of questions presented him.  It was this that was used as a justification to

keep Mr. Sharma from returning to his job at UIC. (Docket 19 ¶¶  161-163)  Any due

process which UIC's policies were supposed to afford Mr. Sharma was summarily denied

by these actions. Contrary to Defendants' bald assertions, Mr. Sharma does mention UIC

procedures and that they were not followed and that he was repeatedly denied

information about why he was being tested, the policies and the ability to select an

evaluator from a list.  Mr. Sharma's Due Process count should not be dismissed.

**V.      Plaintiff's common law claims are not inextricably intertwined with his Discrimination claims under Title VII and are not preempted by the IHRA.**

In a Federal case a plaintiff is allowed to plead alternative and even inconsistent

theories of liability. In the present case, Mr. Sharma pleaded claims of national origin,

race and disability discrimination because the actions of Defendants lend themselves to

liability under these various theories. However, it is possible for these claims to be

omitted from the Complaint. Animus directed at Mr. Sharma because of his adherence to

the policies of UIC  provides an alternative (or concurrent) basis to discern Defendants'

motivations and intent. In fact, the Complaint first filed by Mr. Sharma in State court (by

different counsel)(Case No. 2017-L-00641, Cook County Circuit Court, Law Division),

contained only a count alleging violation of the Illinois Ethics Act.  Because none of the

State common law claims filed by Mr. Sharma require him to prove discrimination (he

could lose the discrimination counts and prevail on other Federal and State claims) these

are not, contrary to Defendants' assertion, inextricably linked to civil rights violations

under the IHRA. Mr. Sharma brings claims under the Due Process clause and the Ethics

Act on which he could prevail without prevailing on any of the discrimination claims

under Title VII, the ADA, Section 1981 or the Equal Protection clause. Defendants'

actions are tortious even without resort to discrimination complaints. Just because the

same facts support recovery under multiple theories does not mean they are

"inextricably linked" and the Court should rule here against Defendants Motion to

Dismiss based on their argument that the IHRA preempts Mr. Sharma's common law

claims.

**VII.    Plaintiff  has sufficiently alleged that UIC individual defendants interfered with his contract or business expectancy with UIC.**

Clearly UIC cannot interfere with its own contract with UIC, nor does Mr. Sharma allege that such interference took place nor does he bring this claim against UIC. Regarding the UIC individual Defendants their argument isn't even a close one. Mr. Sharma, based on his years of excellent performance with an unblemished record had the expectation that his contract would continue to be renewed. Mr. Sharma has alleged that UIC Defendants and Friedman worked in concert to remove him from his position. This necessarily requires the conclusion that they knew he had a business expectancy. As detailed extensively in his Complaint and throughout this brief, UIC Defendants and Friedman interfered purposefully and without authority to do so by manufacturing, out of whole cloth, allegations (some after the fact) intended to cause and/or justify his dismissal from UIC. To the extent they had the power to interfere with his employment resulting in his termination, they clearly took actions directed at the contract Mr. Sharma had with UIC to undermine the relationship and cause his termination.  Mr. Sharma has also alleged compensatory damages, both tangible and intangible, and also seeks punitive damages because of the malice with which Defendants acted. He is not required to plead or prove every act they took. The Complaint gives more than enough of a basis to establish this count if he proves his case at trial or summary judgment.

Furthermore, the language Defendants quote from *Muthuswamy v. Burke*, 269 Ill. App. 3d 728 (1st Dist 1995) refers to "corporate officers, directors and shareholders." To Plaintiff's knowledge, none of the named Defendants hold any of these positions. Defendant willfully ignores the myriad facts alleged that UIC individual Defendants acted

14

solely out of their self-interest and spite. The Court should deny Defendants arguments

directed at the interference with business expectancy/contract count.

**VIII.    Plaintiff agrees that his defamation claim is time barred.**

Plaintiff filed his initial complaint in State court on June 26, 2017. Because this

was more than one year after the defamation claim accrued, even with the benefit of the

relation back of claims, his previous counsel missed this filing deadline.

**IX.    Plaintiff has pleaded a strong claim for retaliatory discharge.**

Plaintiff has detailed numerous instances of trying to enforce UIC policies

governing the use of funds, accounting and personnel. Because UIC is an arm of the State

of Illinois, its policies are "State policies." The case Defendants cite *Spendal v. Illinois-Am*

*Water Co.,* 2013 WL 1285593 forbids retaliation for reporting "illegal or improper

conduct.  Defendants without citation to any precedent then argue that Mr. Sharma

alleged no illegality on the part of Defendants, but he clearly has alleged *improper*

conduct including seeking reimbursement for a life coach, awarding raises without

proper processes and requesting that grant monies be transferred from one fiscal year

to the next. (Docket 19 ¶¶  48-54)  Mr. Sharma ties his resistance to these improprieties

(among others), to the retaliatory actions taken by UIC Defendants against him. The

Court should deny Defendant's motion to dismiss his retaliatory discharge count.

**X.    Defendants' argument requires the Court to determine facts as to whether**
**their conduct was extreme and outrageous and the claim relates back to**
**the filing of his case in State court and so is not time barred**.

As with other arguments Defendants make in their Motion to Dismiss, their

argument for dismissal of his count for intentional infliction of emotional distress

requires the Court to determine whether the conduct complained of is sufficiently

extreme and outrageous. Conspiring to subject an employee with an unblemished record to a psychiatric exam to provide cover for Mr. Sharma's illegal discharge certainly rises to the level of extreme and outrageous conduct. Contrary mto the cases cited by Defendants this was no mere discharge nor simple criticism of Mr. Sharma's performance. According to the well-pleaded facts of his Complaint, these individuals looking for a way to drive Mr. Sharma from his job conspired with a psychiatrist to gin up a reason to justify Mr. Sharma's dismissal. They violated UIC policies around medical examinations, spread rumors and innuendo suggesting Mr. Sharma was dangerous to his co-workers, and did so out of spite and malice simply because Mr. Sharma sought to honestly and diligently perform his job duties and enforce UIC fiscal policies. After he was cleared by UIC doctors they required a second evaluation, administered by a co-conspirator (Friedman). This violated UIC policy to require Mr. Sharma to be evaluated by Freidman and not to be able to choose an evaluator from a list, which guarantees some level of objectivity. Friedman was willing to violate professional norms and ethics to further this scheme and refuse to clear Mr. Sharma because of his purported dishonesty in answering a few of hundreds of questions he was given as part of his evaluation. From an wholly objective standpoint, subjecting an employee to this conduct is extreme and outrageous.

**The IIED claim relates back to the filing of the original Complaint in State Court.**

Contrary to Defendants' assertion, Plaintiff filed his initial Complaint in State Court on June 26, 2017 (Docket 1-1 in removed and consolidated ILND Case No. 17-cv-8003) It was Plaintiff's *First Amended Complaint* that was filed in October 2017. The June 2017 filing date is well within the two-year statute of limitations for IIED claims.

Defendants concede that Plaintiff was subjected to testing in August 2015 he was kept

out of work until his employment ended in September 2017. His initial filing was made

well within this two-year limit.  In *Joseph v. Elan Motorsports Technologies Racing Corp.*,

638 F.3d 555 (7th Cir. 2011), the Seventh Circuit addressed the issue of relation back of a

case amended after removal from State court after the Statute of Limitations expired.

The Court held:

> A party who is on notice long before the statute of limitations expires that he is an
> intended defendant, and who suffers no harm from the failure to have been
> named as a defendant at the outset, is in the same position as a defendant sued
> within the statute of limitations. The public policy expressed in a statute of
> limitations is therefore not undermined by relation back in the circumstances
> specified in the federal rule. See *Dixon Ticonderoga Co. v. Estate of O'Connor*, 248
> F.3d 151, 168 (3d Cir.2001).

In the present case, Plaintiff named the Board as well as Azar, Van Neck and Van Vorhees

in a 34 page Complaint making many of the same factual allegations as those contained

in the present Second Amended Complaint. (Docket 1-1 in removed and consolidated

ILND Case No. 17-cv-8003) Defendants filed a Motion to Dismiss that case, prior to

Plaintiff's current counsel entering the case and amending the State case, and prior to its

removal by Defendants. Based on these dates there is no time bar to Mr. Sharma's IIED

count.

## **CONCLUSION**

For all the foregoing reasons as detailed above, Plaintiff respectfully requests that the

Court deny Defendants' Motion to Dismiss as argued above, to the extent the Court

believes that Plaintiff's Complaint falls short of adequately pleading any count the

dismissal of which Plaintiff contested, Plaintiffs requests leave to amend the Complaint

to cure any such deficiencies.

Respectfully submitted,

By:   /s/  Jorge Sanchez
    One of Plaintiff's attorneys.

Jorge Sanchez
Lopez & Sanchez
77 W. Washington, Suite 1313,
Chicago, IL 60602
attysanchez@gmail.com
(312) 420-6784
ARDC# 6244796


Dated: March 15, 2018